## TOM UNDERWOOD v. STATE.

No. A-3352. Opinion Filed May 16, 1922.
Rehearing Denied March 12, 1923.
(212 Pac. 1010.)

(Syllabus.)

1. **Appeal and Error—Assignments Unsupported by Record not Reviewed.** Assignments of error, not supported by the record, will not be reviewed on appeal.

2. **Indictment and Information—Larceny—Sufficiency of Allegation Negativing Owner's Consent—Meaning of "Steal."** The word "steal" has a uniform signification in common as well as legal parlance; it means the felonious taking and carrying away of

the personal goods of another; it means to take without right, secretly, and without leave or consent of the owner. In the special larceny of live stock statute making it a· felony to "steal" certain live stock, there being no language in the act to indicate that the Legislature intended to place a different· meaning upon the word "steal" than¡ that given to it in its ordinary and legal sense, an information, charging certain live stock to have been taken "feloniously and by stealth," with the further allegations that the taking was with "felonious intent to permanently deprive the owner thereof and to appropriate the property to the use of the taker," there is a sufficient negation of the owner's consent to the taking. The cases of Beck v. State, 14 Okla. Cr. 3, 166 Pac. 753, and Yates v. State, 14 Okla. Cr. 10, 166 Pac. 904, in so far as in conflict herewith, are expressly overruled; the decision in Crowell v. State, 6 Okla. Cr. 148, 117 Pac. 883, is followed.

3.     **Trial—Issues Covered by Instruction on Reasonable Doubt Where Defense Merely Negation of Guilt.** The defendant is entitled to an affirmative instruction covering the defense interposed, when requested. Where the defense amounts merely to a negation of guilt, and the trial court instructs fully upon the necessity to prove guilt beyond a reasonable doubt as against the presumption of innocence, instruction will ordinarily be held to be sufficient to cover the issues.

Appeal from District Court, Delaware County; John H. Pitchford, Judge.

Tom Underwood was convicted of stealing two steers, and he appeals. Affirmed.

Ira A. Miller, J. W. Miller, and S. F. Parks, for plaintiff in error.

The Attorney General, for the State.

MATSON, J. This is an appeal from the district court of Delaware county wherein the plaintiff in error, Tom Underwood, hereafter referred to as defendant, was convicted of stealing two steers, the property of one George Franklin, and sentenced to serve a term of two years in the state penitentiary. From the judgment rendered against him he has appealed to this court, and assigns several errors, which will be considered in the order presented in the brief.

It is first contended that G. W. Goad, who filed the information in the trial court as county attorney of Delaware county, was not the duly elected and qualified county attorney of that county, and had no authority to present an information to said court charging a criminal offense. We find nothing in the record to support the motion to set aside the information on this ground. Assignments of error not supported by the record will not be reviewed on appeal. Fain v. State, 14 Okla. Cr. 556, 174 Pac. 296; Keeter v. State, 15 Okla. Cr. 139, 175 Pac. 263.

It is also contended that the trial court erred in overruling the demurrer to the information. The demurrer was on the ground that the information did not show that a public offense had been committed.

The charging part of the information is as follows:

"That Tom Underwood did, in Delaware county and in the state of Oklahoma, on or about the 10th day of July, 1915, * * * willfully, unlawfully, feloniously, and by fraud and stealth take certain personal property, to wit, one red yearling past steer, valued at $25, and one red yearling past steer with white on face, valued at $25, both branded with a 'U Bar' on hip, said steers being taken in one transaction and at the same time, from the possession and control of George Franklin, the owner of said property so taken, with the felonious intent in him, the said Tom Underwood, to permanently deprive the said owner thereof and to appropriate the same to the use of him, the said Tom Underwood, contrary," etc.

It is contended that the foregoing information is fatally defective for the reason that it fails to allege that the property stolen was taken "without the consent of the owner," and in support of this contention the cases of Beck v. State, 14 Okla. Cr. 3, 166 Pac. 753, and Yates v. State, 14 Okla. Cr. 10, 166 Pac. 904, are in point. If the Beck and Yates Cases are to be followed, the information in the instant case is

fatally defective. Upon more mature reflection this court is of the opinion that the decision in the cases of Beck v. State and Yates v. State, supra, were not well considered, and are contrary to previous holdings of this court, where the identical question was involved, and for such reasons, where said cases are in conflict with the opinion in this case, they are expressly overruled.

The statute on which this prosecution is based reads as follows:

"Any person in this state who shall steal any * * * cow or hog shall be guilty of a felony and upon conviction shall be punished by confinement in the penitentiary for a term of not less than" two years "nor more than ten years. * * * The word 'cow,'" as used in this act, "shall include all animals of the bovine species." Rev. Laws 1910, § 2667.

The act is similar in its provisions to the larceny of domestic animals act construed by the Territorial Supreme Court in Hughes v. Territory, 8 Okla. 28, 56 Pac. 708, and by this court in Crowell v. State, 6 Okla. Cr. 148, 117 Pac. 883, in both of which cases it was held that the word "steal" as used in the act is employed in its common-law sense, and is not synonymous with the term "larceny," as defined by the Oklahoma statutes; that while larceny and stealing, at common law, were synonymous terms, our statute has given to the word "larceny" a much broader meaning than it had at common law, while the word "steal" or "stealing" has received no definition by our statutes, and must therefore be construed according to its common-law meaning. Therefore it is necessary for the court to look to the common law to ascertain the nature and limits of the special felony commonly known as the larceny of live stock statute. The word "steal" has a uniform signification in common as well as legal parlance; it

means the felonious taking and carrying away of the personal goods of another; it means to take without right, secretly, and without leave or consent of the owner.  Baldwin v. State, 46 Fla. 115, 35 South. 220; State v. Minnick, 54 Or. 86, 102 Pac. 605; State v. Perry, 94 Ark. 215, 126 S. W. 717; Hughes v. Territory, supra; Crowell v. State, supra.

In the latter case an information, the charging part of which was practically identical with the information in the instant case, was held sufficient to charge an offense under a special larceny of live stock statute which made it a felony to "steal" certain live stock.  In the statute here under consideration the Legislature has merely employed the word "steal" to define the offense.  There is no further language in the act to indicate that it was intended to place a different meaning upon that word than that given to it in its ordinary and legal sense.  The information in the instant case charges the property to have been taken "feloniously and by stealth," and then follows additional allegations that the taking was with "felonious intent to permanently deprive the owner thereof and to appropriate the property to the use of the taker." Upon more mature consideration the court is of the opinion that the allegation that the taking was "felonious and by stealth" is sufficient to charge that the taking was "without the consent of the owner," and that the cases of Beck v. State and Yates v. State, supra, holding similar informations defective because the additional allegation "without the consent of the owner" was not contained therein, are against the weight of authority and contrary to the earlier decisions of both the Territorial Supreme Court and of this court, and should be overruled.  In this connection it is not to be understood that it is unnecessary for the state (in proving the felony defined by the statute here under consideration) to prove a taking without the consent of the owner, but it is

merely held that, where the information alleges a "felonious taking by stealth with the felonious intent to permanently deprive the owner of the property and to appropriate the same to the taker's use," there is a sufficient negation of the owner's consent to the taking, contained in the information. For such reasons we hold that the trial court did not err in overruling the demurrer to the information.

It is next contended that the trial court erred in refusing to give certain instructions and in giving a certain instruction, all over the objection and exception of the defendant. We have examined the instructions refused and the instruction given, and have considered the same in connection with the issues as disclosed by the evidence, and are of opinion that the defendant was not prejudiced by the trial court's action in these respects.

While it has been held by this court that, when requested, the defendant is entitled to an affirmative instruction covering the defense interposed, and it would be reversible error to refuse such instruction when requested, yet in this case the defense interposed was not in its nature affirmative, but amounted merely to a negation of guilt, and for that reason we are of the opinion that the trial court's instructions, requiring the state to prove guilt beyond a reasonable doubt as against the presumption of innocence, were sufficient.

For the reasons stated, the judgment is affirmed.

DOYLE, P. J., and BESSEY, J., concur.